**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSE ANGEL MALDONADO,<br><br>Petitioner,<br><br>v.<br><br>MARTIN O'MALLEY,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>Defendant. | No.   1:23-cv-00734-SKO<br><br>**ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT**<br><br>(Doc. 1) |

## I.   INTRODUCTION

Plaintiff Jose Maldonado ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). (Doc. 1).  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II.   BACKGROUND

Plaintiff was born on June 9, 2019.  (Administrative Record ("AR") 241).  He filed a claim

---

[1] The parties have consented to the jurisdiction of the U.S. Magistrate Judge.  (*See* Doc. 10).

for DIB on December 2, 2019, alleging a disability onset date of November 14, 2017.  (AR 24).  Plaintiff later amended his alleged onset date to December 2, 2019.  (AR 24).  In his application, he alleged disability based on his "ankle problem, varicose veins, knee problem, back problem, and high blood pressure."  (AR 249).  Plaintiff has a 11th-grade education and previous work experience in restaurants and retail.  (AR 250).

**A.     Relevant Evidence of Record**[2]

Plaintiff consistently reports lower extremity pain, tightness and swelling.  (*See, e.g.*, AR 329).  His legs are darkly pigmented with marked varicose veins.  (AR 319, 323, 336).  He has been diagnosed with bilateral lower extremity varicose veins with venous insufficiency (advanced).  (AR 323).  Doctors referred Plaintiff to a vascular surgeon in June 2019 (AR 323).  He underwent a lower extremity venous doppler/reflux study in October 2019.  (AR 329).  The final report found no evidence of deep vein thrombosis or deep venous insufficiency bilaterally.  (AR 330).  A 2022 study revealed the same findings.  (AR 377-78).  To address his leg pain, doctors have prescribed that Plaintiff wear compression socks, elevate his legs above his heart for 15 minutes daily, and limit his salt intake.  (*See, e.g*., AR 332 (August 2019), AR 344 (January 2021), AR 346 (April 2021)).  Plaintiff intermittently wears compression socks.  He reports that they sometimes help with his symptoms, while other times, they do not.  (*See* AR 331 (stating in August 2010 that compression socks do not help with his symptoms)); *see also* AR 333 (stating in November 201 that he wears compression socks daily, which seem to help with his symptoms).

Throughout the relevant period, Plaintiff weighed roughly 346 pounds (AR 319), which produced a Body Mass Index of 48, qualifying Plaintiff as morbidly obese.  (AR 319, 322).  Doctors often advised Plaintiff to lose weight (*see* AR 319) and referred him for weight loss surgery (AR 321).  Plaintiff has also reported knee pain, and an x-ray shows his right knee has moderate degenerative changes in the medial joint space, joint space narrowing, sclerosis, and osteophyte formation.  (AR 363).

A November 2020 internal medicine evaluation found Plaintiff could stand and walk for up

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

to six hours with no maximum sitting capacity.  (AR 338).  The evaluation also found Plaintiff could climb stairs and ladders frequently; he could stoop and crouch frequently; and he had no limitations related to balancing, kneeling or crawling.  (AR 339).  His gait was normal, and doctors noted he could move "fairly swiftly," as well as stand on his toes, heels, one leg alone, and that he could squat.  (AR 337).  Plaintiff underwent a successful vein ablation in May 2021 (AR 342).

At the hearing, Plaintiff testified he could not stand on his feet for longer than 30 minutes because of a stabbing sensation in his feet and legs.  (AR 48-50).  He reported using a cane (AR 51) and that he could walk between 0.25 and 0.5 miles.  (AR 51).  When asked what the biggest challenge would be to working a 40-hour week, Plaintiff testified, "I would probably have to . . . use a cane and move around, just move around to circulate my feet and my legs.  But I wouldn't be able to stand or withstand an eight-hour period."  (AR 53).  In a function report, Plaintiff stated he prepares his meals, mows the law, washes dishes, and cleans.  (AR 279).  He also stated he goes outside "very often," he does his shopping and that he drives, dances, goes to the park, and shops.  (AR 280-81).

**B.     The ALJ's Decision**

The Commissioner denied Plaintiff's application for benefits initially on December 3, 2020, and again upon reconsideration on June 30, 2021.  (AR 24).  Plaintiff requested a telephonic hearing before an Administrative Law Judge (an "ALJ"), and the parties attended a hearing on March 1, 2022.  (AR 24).  Plaintiff was represented by counsel.  (AR 24).  Jeff Komar, an impartial vocational expert, also testified at the hearing.  (AR 24).  In a decision dated May 18, 2022, the ALJ found that Plaintiff was not disabled as defined by the Act after conducting the five-step disability analysis set forth in 20 C.F.R. § 404.1520.  (AR 24-33).

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since December 2, 2019 (step one).  (AR 27).  At step two, the ALJ found that Plaintiff suffers from the following severe impairments: chronic venous insufficiency (CVI) and obesity (20 CFR 416.920(c)).  (AR 27).  Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  (AR 27).

3

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[3] and applied the assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ found Plaintiff perform "medium work as defined in 20 CFR 416.967(c) except he can frequently climb ramps, occasionally climb ladders, ropes or scaffolds and must avoid concentrated exposure to heights and dangerous moving machinery." (AR 28). At steps four and five, the ALJ found that Plaintiff had no past relevant work, and therefore, the transferability of job skills was not at issue. (AR 32). The ALJ concluded that considering his age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (AR 32). The ALJ based this finding on the testimony of the Vocational Expert ("VE"), who testified Plaintiff could perform the following jobs: Meat Clerk (Dictionary of Occupational Titles ("DOT") 222.684-010); Industrial Cleaner (DOT 381.687-018); and Courtesy Clerk (DOT 920.687-014). (AR 32). The ALJ concluded Plaintiff was not disabled under the Social Security Act. (AR 32-33).

Plaintiff sought review of this decision before the Appeals Council, which denied review on March 14, 2023. (AR 1-4). Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

### III. LEGAL STANDARDS

**A. Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable

---

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that he is not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only]

when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.   DISCUSSION

Plaintiff contends, *inter alia*, that the ALJ's RFC determination is not supported by

substantial evidence because (1) the ALJ failed to provide specific, clear, and convincing reasons for discounting his allegations of lower extremity pain; and (2), the ALJ formulated a residual functional capacity that failed to fully account for the functional impact of Plaintiff's morbid obesity. The Court concludes the ALJ did not err in any of these respects.

**A.     The ALJ Offered Sufficient Reasons to Discount Plaintiff's Subjective Complaints**

**1.     Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id*. The claimant is not required to show their impairment "could reasonably be expected to cause the severity of the symptom [they] ha[ve] alleged; [they] need only show that it could reasonably have caused some degree of the symptom." *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection.[4] *Id*. As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The clear and convincing standard is "not an easy

---

[4] The Court rejects the Commissioner's contention that a lesser standard of review applies. (*See* Doc. 14 at 13).

requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).  General findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester*, 81 F.3d at 834).

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *1 (1996); *see also* 20 C.F.R. § 416.945(a).  It reflects the most a claimant can do despite their limitations.  SSR 96-8p, 1996 WL 374184, at *1.  In formulating the RFC, the ALJ must account for all the claimant's medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence." 20 C.F.R. § 416.945(a); *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (holding that "an RFC that fails to take into account a claimant's limitations is defective").  Therefore, an ALJ errs when they provide an incomplete RFC ignoring "significant and probative evidence." *Hill v. Astrue*, 698 F.3d 1153, 1161-2 (9th Cir. 2012).

An RFC assessment is ultimately an administrative finding reserved to the Commissioner.  20 C.F.R. § 416.946.  The RFC does not need to directly correspond to a specific medical opinion; rather, "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015); *see also Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (noting the ALJ's responsibility to weigh conflicting medical evidence and translate accepted medical opinions into "concrete restrictions"). "ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work." *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022) (citing *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998)).  The ALJ's RFC assessment should be affirmed if the ALJ has applied the proper legal standard and their decision is supported by substantial evidence in the record.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

**2.     Analysis**

Because the ALJ found Plaintiff's "medically determinable impairments reasonably could be expected to cause the alleged symptoms," (AR 29) the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding.  *See Vasquez*, 572 F.3d at 591.  Plaintiff contends the ALJ failed to state clear and convincing reasons to discount his subjective complaints of lower extremity pain. These arguments are unavailing.

The ALJ first cited Plaintiff's medical records, which largely contradicted Plaintiff's testimony of disabling pain and showed no acute distress, no calf tenderness, a normal gait, normal motor strength, and symmetric reflexes.  (AR 30 (citing Exs. 1F:3; 3F:3; 9F:3, 5, 7, 9)).  "While a *lack* of objective medical evidence may not be the sole basis for rejection of symptom testimony, inconsistency with the medical evidence or medical opinions can be sufficient."  *Woods v. Comm'r of Soc. Sec. (Woods I)*, No. 1:20-cv-01110-SAB, 2022 WL 1524772, at *10 n.4 (E.D. Cal. May 13, 2022) (emphasis in original).  This alone is sufficient to discount Plaintiff's subjective complaints. *Id.*

The ALJ also found that Plaintiff's daily activities contradicted his testimony that his lower extremity pain prevented him from working.  A Plaintiff's daily activities may allow an ALJ to discount his subjective complaints where (1) those activities "contradict his other testimony" or (2) they "meet the threshold for transferable work skills."  *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007).  The ALJ noted Plaintiff "is able to live with others, handle his finances, attend to his personal care, prepare simple meals, mow the lawn, sweep, mop, vacuum, wash dishes, do laundry, clean [a] bathroom, drive, go out alone, shop in and socialize in person and on the phone. These relatively intact daily activities are consistent with the above medium residual functional capacity." (AR 31).  Plaintiff contends there was no clear connection between the identified activities and Plaintiff's ability to perform medium full-time level work.  (Doc. 14 at 7).[5]  Plaintiff further contends these activities "were not inconsistent with his allegations that he could stand for 20 to 30

---

[5] Plaintiff also suggests the ALJ improperly relied on daily activities such as Plaintiff's ability to count change, handle a savings account, and use a checkbook/money orders, because those activities had no logical connection to the severity of Plaintiff's lower extremity pain.  (*See* AR 28).  The ALJ, however, did not rely on these activities when discrediting Plaintiff's subjective complaints, but rather, merely noted these activities while summarizing the record. (*See* AR 28).

9

minutes at a time, sit for 20 to 30 minutes at a time, and walk 100 feet before taking a break." (Doc. 14 at 7).

Plaintiff's arguments largely suggest the ALJ should have come to a different conclusion when evaluating the evidence, but "[i]f the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." *Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). While Plaintiff contends there is no connection between the claimed activities and medium work, the ALJ used Plaintiff's list of daily activities to conclude that Plaintiff's day-to-day life was largely unimpeded by his lower extremity pain, which would subsequently translate to being able to perform medium work. *See* 20 C.F.R. § 404.1529(c)(3)(i) (activities of daily living are relevant to the symptom testimony evaluation); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th. Cir. 2008) ("The ALJ may consider many factors in weighing a claimant's subjective complaints," including "the claimant's daily activities"). The ALJ reasonably considered these daily activities to be inconsistent with Plaintiff's alleged inability to work, and such inconsistency was another clear and convincing reason to find his testimony not credible. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008); 20 C.F.R. § 404.1529(c)(3).

The ALJ also found Plaintiff's limited treatment supported the fact that Plaintiff was not as hindered as he claimed. *See* 20 C.F.R. § 404.1529(c)(3)(iv), (v) (treatment history is a valid factor for evaluating a claimant's symptom testimony). For instance, Plaintiff inconsistently wore compression stockings, and there was no evidence of cane use in the record. (AR 30). The ALJ also noted that Plaintiff continued to smoke, despite being counseled to quit. (AR 30). An ALJ may discount a claimant's subjective complaints based on inconsistent treatment (*Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)), and the ALJ did so here. For all of these reasons, the ALJ did not err by discounting Plaintiff's testimony.

**B.    The ALJ Properly Accounted for Plaintiff's Obesity When Formulating the RFC**

   **1.    Legal Standard**

An ALJ must consider the limiting effects of a claimant's obesity when assessing their RFC. Social Security Ruling 19-2p ("SSR 19-2p"), *Titles II and XVI: Evaluating Cases Involving Obesity*, 84 FR 22924-01, 2019 WL 2161798 (May 20, 2019). Obesity is defined as a BMI of 30.0

or higher. *Id.* at 22924–25. Signs and lab findings from an accepted medical source may establish obesity, including measured height and weight and BMI measurements over time. *Id.* A person is considered to have obesity if his or her weight or BMI shows a "consistent pattern of obesity." While obesity is not a listed impairment, "[o]besity in combination with another impairment(s) may or may not increase the severity or functional limitations of the other impairment(s)." *Id.* "As with any other impairment, [the ALJ] will explain how [the Administration] reached our conclusion on whether obesity causes any limitations." *Id.* Each case is evaluated based on the facts in the record. *Id.*

**2. Analysis**

Plaintiff contends the ALJ did not properly consider his obesity when formulating his RFC. He contends the ALJ "failed to provide any specific evaluation of Plaintiff's obesity, the functional effects arising therefrom, or the exacerbating effects of obesity on Plaintiff's lower extremity impairments." (Doc. 14 at 11). As discussed below, the ALJ sufficiently considered Plaintiff's obesity when formulating his RFC.

In *Santiago v. Saul*, 777 F. App'x 237, 238 (9th Cir. 2019), the Court determined that the ALJ did not err in failing to consider the impact of the plaintiff's obesity on his functional limitations where "the ALJ considered obesity in conjunction with [the plaintiff's] other severe impairments and [the plaintiff] pointed to no functional limitations that the ALJ failed to consider". Here, at step two, the ALJ found Plaintiff's obesity amounted to a severe impairment. (AR 27). In her decision, the ALJ found the following related to Plaintiff's obesity:

> The record also reflects that the claimant was diagnosed with morbid obesity (Ex. 1F:3). The claimant's weight was documented in the medical records from a low of 237 pounds to a high of approximately 346 pounds (Exs. 1F:3, 6; 4F:4, 6). At a reported height of 5'11", the claimant has a body mass index (BMI) of 33.1 to 48.3. In accordance with SSR 19-2p, the undersigned has considered the impact obesity has on limitation of function including the claimant's ability to perform routine movement and necessary physical activity within the work environment, as well as to sustain a function over time, and its potentially exacerbating effect on the claimant's subjective symptoms, including pain.

(AR 30). The ALJ noted Plaintiff's weight and BMI, and she considered its impact on his ability to work, to perform routine movement, and to function over time. (AR 30). While Plaintiff

11

contends the ALJ's failed to articulate *how* she considered Plaintiff's obesity in connection with his other ailments, this argument is unavailing. *See Keyes v. Comm'r*, No. 1:21-CV-01779-EPG, 2023 WL 2166917, at *5 (E.D. Cal. Feb. 22, 2023) ("nothing in SSR 19-2p requires an ALJ to articulate specific findings regarding any impairment"); *see also Despas v. Colvin*, No. C-14-0681 DMR, 2015 WL 899953, at *9 (N.D. Cal. Mar. 2, 2015) (concluding that ALJ adequately considered Plaintiff's obesity where they specifically noted they did so in accordance with SSR 02-01p and where Plaintiff failed to identify any further necessary limitations).

The Plaintiff has also not identified any evidence in the record which suggests Plaintiff's obesity limits his functioning. Plaintiff asserts that "[c]onsidering that Plaintiff already had severe veinous insufficiency and moderate degenerative changes in his right knee, the additional impact of morbid obesity would certainly preclude him from standing/walking up to 6 hours in an 8-hour workday without additional breaks to rest and elevate his legs." There are no treatment notes or other diagnoses that address how Plaintiff's obesity may exacerbate his other conditions, nor do any other medical records back Plaintiff's assertion. Absent any indication that the ALJ failed to account for specific limitations related to Plaintiff's obesity, Plaintiff has not demonstrated any error. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (finding the ALJ did not fail to account for a claimant's injuries "in some unspecified way" when the claimant did not detail what other limitations followed his condition); *Hoffman v. Astrue*, 266 Fed. Appx. 623, 625 (9th Cir. 2008) (finding the ALJ did not err in failing to consider Plaintiff's obesity when Plaintiff how obesity increased the severity of other limitations); *Burch*, 400 F.3d at 684 ("[Plaintiff has not set forth, and there is no evidence in the record, of any functional limitations as a result of her obesity that the ALJ failed to consider."). As such, the ALJ adequately evaluated Plaintiff's obesity when formulating his RFC.

## V.   CONCLUSION AND ORDER

For the foregoing reasons, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Martin O'Malley,

Commissioner of Social Security, and against Plaintiff Jose Maldonado.

IT IS SO ORDERED.

Dated:   **June 5, 2024**                                        /s/ *Sheila K. Oberto*
                                                                    UNITED STATES MAGISTRATE JUDGE